UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SOONHEE JANG,

        Plaintiff,

    v.

DUPONT E.I. DE NEMOURS & CO.,

        Defendant.

Case No. 15-cv-03719 NC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE**

Re: Dkt. No. 16

In this employment class action, Soonhee Jang alleges that her former employer DuPont breached its employment contract with her and other class members, constituting an unfair business practice. The parties ask the Court to interpret the terms of an employment contract dictating the manner and schedule of stock option compensation. The dispute turns on whether an one-year expiration date for all unexercised stock options after an employee is terminated "Due to Lack of Work" applies to unvested options. Because the expiration clause is not ambiguous and DuPont has not breached the contract by enforcing the expiration clause, Jang's complaint is dismissed without leave to amend.

United States District Court
Northern District of California

## I.   BACKGROUND

Jang worked for DuPont Industrial Biosciences in Palo Alto, California through June of 2014.[1]  Dkt. No. 1 at ¶ 1 (Complaint).  In 2013 and 2014, a part of her compensation package included stock-based compensation called "non-qualified stock options."  *Id*. at ¶15.  As detailed in the Complaint, such awards are made pursuant to, and governed by, the DuPont Equity and Incentive Plan and associated Prospectus.[2]  *Id*. at ¶¶ 2, 12.  Each award is made pursuant to, and further governed by, a written grant called the "Award Terms."  *Id*. at ¶¶ 10-11.  The Complaint references two of these Award Terms: one effective February 6, 2013 (the "2013 Award Terms"), the other effective February 5, 2014 (the "2014 Award Terms").  *Id*.  The applicable Award Terms state:

> If you are an active employee for six months following the Date of Grant, the Options will be exercisable through the date that is one year after the date of your termination of employment or, if earlier, the Expiration Date set forth above. After that date, any unexercised Options will expire.  Any unvested Options as of the date of termination will continue to vest in accordance with the Vesting Schedule set forth above.

Options are defined as all "non-qualified stock options" in the 2013 and 2014 Award Terms of options granted under the DuPont Equity and Incentive Plan, which is the contract at issue.  Dkt. No. 17 at 92.

Jang's termination was classified as "Due to Lack of Work."  Complaint at ¶11. When Jang was terminated, one-third of her 2013 stock options were exercisable by June 2015 or prior to their expiration date, whichever came sooner.  *Id*. at ¶15.  However, two-thirds of her 2013 stock options and the entirety of her 2014 stock options remained unvested at that time.  *Id*.  Therefore, when DuPont terminated all of her stock options in

---

[1] DuPont disputes Jang's exact date of termination, but concedes that the discrepancy "is not material" to the legal questions here.  Dkt. No. 16 at 10 n.5.

[2] DuPont has attached a copy of the Plan, the Prospectus, and Award Terms that comprise the disputed contract to its Motion to Dismiss.  Dkt. No. 17 (Exhibits A-F).  The Complaint specifically refers to the contract and its authenticity is not in question, so the Court takes notice of the documents.  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."): *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (at the Rule 12(b)(6) stage, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice").

United States District Court
Northern District of California

1    June of 2015 citing the one-year expiration date, she lost all options that had not vested.

2    *Id.*

3    ## II.   LEGAL STANDARD

4         A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

5    sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  On a

6    motion to dismiss, all allegations of material fact are taken as true and construed in the

7    light most favorable to the non-movant.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-

8    38 (9th Cir. 1996).  The Court, however, need not accept as true "allegations that are

9    merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re*

10   *Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need

11   not allege detailed factual allegations, it must contain sufficient factual matter, accepted as

12   true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

13   550 U.S. 544, 570 (2007).  A claim is facially plausible when it "allows the court to draw

14   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

15   *v. Iqbal*, 556 U.S. 662, 678 (2009).

16   ## III.   DISCUSSION

17        Jang argues that by terminating her unvested stock options one year after her

18   termination, DuPont has breached the express terms of its contract with her.  Jang further

19   alleges that this contractual breach has deprived DuPont employees of promised and

20   earned compensation in violation of California Business and Professions Code § 17200,

21   the Unfair Competition Law.  DuPont asserts that the contract is clear on its face and the

22   one-year expiration date applies to all stock options, including unvested options.  As such,

23   DuPont argues that it has neither breached the contract nor violated California's Unfair

24   Competition Law.

25        ### A.   Breach of Contract

26        Under Delaware law, a plaintiff claiming breach of contract must allege "1) a

27   contractual obligation; 2) a breach of that obligation by the defendant; and 3) resulting

28   damage to the plaintiff."  *H-M Wexford LLC v. Encorp., Inc.,* 832 A.2d 129, 140 (Del. Ch.

United States District Court
Northern District of California

2003).[3]  Here, there is no dispute that there was a contractual obligation between the parties, as described in the Plan and Award Terms.  *See* Dkt. No. 17.

The disputed issue is whether DuPont breached the express terms of the contract by terminating all of Jang's scheduled stock options, including the unvested tranches, one year after her employment ended.  Jang argues that "[t]he Awards Terms state that unvested options continue to vest on schedule after employment termination.  Instead of allowing Plaintiff's unvested option to vest on schedule, DuPont cancelled them in breach of the contract."  Dkt. No. 19 at 9.  DuPont argues that because the one-year expiration date applied to all stock options, enforcing it for both vested and unvested options did not breach the contract.

The "determination of whether a contract is ambiguous is a question for the court to resolve as a matter of law."  *NBC Universal v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005) (citing *Pellaton v. The Bank of New York,* 592 A.2d 473, 478 (Del. 1991).

Contractual terms are "not rendered ambiguous simply because the parties in litigation differ" concerning their meaning, nor because the parties "do not agree upon [their] proper construction."  *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.,* 624 A.2d 1191, 1198 (Del. 1993).   Rather, "a contract term is ambiguous only when the provisions in controversy are reasonable or fairly susceptible of different interpretations or may have two or more different meanings.  Therefore, the court's analysis is initially focused solely on the language of the contract itself.  If that language is unambiguous, its plain meaning alone dictates the outcome."  *Comet Sys., Inc. Shareholders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. 2008) (internal citations omitted).

"[A] contract's construction should be that which would be understood by an objective, reasonable third party."  *NBC Universal,* 2005 WL 1038997, at *5.  Therefore, "[c]ontract terms themselves will be controlling when they establish the parties' common

---

[3] The Equity and Incentive Plan is governed by Delaware law and the parties agree that Delaware law applies.  Dkt. No. 16 at 11 n.6; Dkt. No. 19 at 9 n.1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   meaning so that a reasonable person in the position of either party would have no

2   expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss*

3   *Health Care, Inc.,* 702 A.2d 1228, 1232 (Del. 1997).

4           Here, the contract is clear on its face.  It states in the relevant provision, "the

5   Options will be exercisable through the date that is one year after the date of your

6   termination of employment or, if earlier, the Expiration Date set forth above.  After that

7   date, any unexercised Options will expire."  Complaint at ¶ 15.  "Options" is a defined

8   term in the award terms meaning all "non-qualified stock options."  Dkt. No. 17 at 92.

9   "Option" therefore encompasses both vested and unvested options.

10          Jang argues that the next sentence, "[a]ny unvested Options as of the date of

11  termination will continue to vest in accordance with the Vesting Schedule set forth above,"

12  removes all unvested options from application of the one-year cap in the sentence prior.

13  Complaint at ¶ 15.  Jang thereby seeks an exemption for unvested options to the one-year

14  expiration date set in the sentence prior.  In other words, Jang reads the one-year limitation

15  on the stock options to include only vested, not unvested options.

16          Jang does not submit parol evidence to suggest that someone at DuPont represented

17  to her that the unvested options were not subject to the one-year expiration date.  She

18  argues that on its face, this contract promises employees a post-employment package that

19  does not limit their vesting schedule for stock options to a one-year limit.  If this reading

20  were correct, DuPont points out that it would create an odd half-limitation: all vested

21  options would expire after a year, but unvested options would continue untouched.  Dkt.

22  No. 16 at 14.  Because this reading is at odds with the plain meaning of the contractual

23  language, the Court grants DuPont's motion for dismissal.

24          Jang further argues that if this contractual language is ambiguous, the ambiguity

25  must be construed against the drafter.  *Rebolledo v. Tilly's, Inc.*, 228 Cal. App. 4th 900,

26  913 (2014) ("ambiguities in standard form contracts are to be construed against the

27  drafter").  That is a correct statement of contract law, but this contract is not ambiguous.

28  The one-year expiration date applies to all non-qualified stock options, vested or unvested.

Case No. 15-cv-03719 NC                    5

As such, dismissal of the breach of contract claim is proper.

**B.    Claims Under California UCL**

Jang alleges that DuPont's actions in depriving employees of promised and earned compensation violate § 17200 of the California Business & Professions Code.  Dkt. No. 19 at 14.  According to Jang, "DuPont's systemic breach of its employee contracts properly provides the basis for [her] UCL Claim."  *Id.*  She points to the expansive nature of the UCL and its ability to cover a wide range of practices, including antitrust, consumer, and employment claims.  *Id.*  Jang argues that DuPont engaged in anti-competitive behavior by promising employees benefits—the full schedule of their vesting stock options unabated by an expiration date—that it never delivered.  *Id.*  However, this Court has determined that the contract in fact did not promise those benefits because the one-year limit was not ambiguous and applied to vested and unvested stock options alike.

Similarly, Jang argues that DuPont's contractual breach constituted a "[f]raudulent [b]usiness [p]ractice [u]nder the UCL."  *Id.* at 16.  Jang analogizes to *Lyons v. Bank of Am., NA*, No. 11-cv-01232 CW, 2011 WL 3607608, at *11 (N.D. Cal. Aug. 15, 2011), in which the Court found allegations that defendants had engaged "in a pattern and practice" of breaching loan modification agreements sufficient to satisfy the unlawfulness prong of the UCL.

Here, Jang alleges that "DuPont not only breached her contract but that breaching the contracts of its employees was DuPont's standard practice."  Dkt. No. 19 at 15. Therefore, "DuPont's systemic practice of duping its employees into contracts which promised stock options but then arbitrarily cancelled them harmed over 1000 employees." *Id.*  However, because DuPont did not breach the contract, this attendant UCL claim cannot proceed.  *Keen v. Am. Home Mortgage Servicing, Inc.*, 664 F. Supp. 2d 1086, 1102 (E.D. Cal. 2009) (dismissing the plaintiff's cause of action for violations of California Business & Professions Code § 17200 because "plaintiff's UCL claim is predicated on facts supporting her other claims, all of which the court has dismissed").

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### C.   Dismissal With Prejudice

Generally, a Court must grant leave to amend freely.  Fed. R. Civ. P. 15(a). However, it "is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (citing *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau,* 701 F.2d 1276, 1292–93 (9th Cir. 1983)).  Here, it would be futile to permit Jang to amend because the complaint rests solely on the contractual language that has already been presented.  The complaint is therefore dismissed in its entirety without leave to amend.

## IV.  CONCLUSION

Because the terms of the expiration date one year after Jang's termination unambiguously apply to both vested and unvested stock options, DuPont's termination of those options did not constitute a breach of contract.  Jang's UCL claims stemming from a breach of contract therefore likewise fail.  Accordingly, the Court dismisses the complaint with prejudice.

**IT IS SO ORDERED.**

Dated:  November 20, 2015                                    _____

NATHANAEL M. COUSINS
United States Magistrate Judge